**Case No. 23-3890**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

SHAWN LIGGONS
Plaintiff-Appellant,

v.

GENERAL MOTORS, LLC; UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 14

Defendants-Appellees.


On Appeal from the United States District Court for the Northern District of Ohio
Case No. 3:20-cv-01208, Judge Jeffrey J.  Helmick

_____

**BRIEF OF APPELLEE GENERAL MOTORS, LLC**

_____

Ellen Toth (0056157)
Samuel H. Ottinger (0099034)
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
216-241-6100
216-357-4733 (FAX)
Email:  ellen.toth@ogletree.com
          samuel.ottinger@ogletree.com

*Attorneys for Appellee General
Motors, LLC*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, General Motors, LLC makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly-owned corporation?

      Answer:     Yes.

      General Motors, LLC is 100% owned by General Motors Holdings, LLC, which is 100% owned by General Motors Company.

2.     Is there a publicly-owned corporation, not a party to the appeal that has a financial interest in the outcome?

      Answer:     No.

| | |
|---|---|
| */s/Samuel H. Ottinger* <br> Samuel H. Ottinger | DATED: February 15, 2024 |

## <u>TABLE OF CONTENTS</u>

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST** ........................................................................ i

**TABLE OF AUTHORITIES** ................................................................ iv

**JURISDICTIONAL STATEMENT** ..................................................... vii

**COUNTER-STATEMENT OF THE ISSUES PRESENTED** ................. vii

**STATEMENT OF THE CASE** .............................................................. 1

**I.   INTRODUCTION.** ................................................................... 1

**II.  STATEMENT OF RELEVANT FACTS.** ................................. 3

    **A.   Liggons' Employment With GM.** ................................. 3

    **B.   Plaintiff's History Of Attendance Violations And Corresponding Discipline.** ................................ 4

    **C.   GM Addresses Liggons' Complaints He Was Not Properly Credited Under The Contractual Wage Schedule.** ................................ 7

    **D.   GM Terminates Liggons' Employment for Violating Its Unauthorized Recording Policy.** ................................ 9

    **E.   Liggons' History of Filing Charges of Discrimination, Harassment, and Retaliation Against GM.** ................ 11

**III. SUMMARY OF THE ARGUMENT.** ..................................... 12

**IV.  ARGUMENT.** ........................................................................ 13

    **A.   The District Court Correctly Concluded Liggons Failed to Establish a *Prima Facie* Case of Retaliation.** .......... 13

        **1.   Liggons cannot establish a decision-maker knew about his protected activity.** ................ 14

**2.     Liggons cannot establish a causal connection between his protected activity and adverse employment action.** ............15

**3.     GM can identify a legitimate non-discriminatory reason for adverse actions and there is no evidence of pretext.**............17

**B.     The District Court Correctly Dismissed Liggons' Race and Disability Discrimination Claims.**....................................17

**V.     CONCLUSION.** ...................................................................24

**CERTIFICATE OF COMPLIANCE** ....................................................25

**CERTIFICATE OF SERVICE** ..........................................................26

**ADDENDUM I** ...............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Crown Motor Co., Inc.*,
348 F.3d 537 (6th Cir. 2003) ...............................................................13, 14, 17

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)...........................................................................................19

*Aloisi v. Lockheed Martin Energy Systems, Inc.*,
321 F.3d 551 (6th Cir. 2003) ............................................................................19

*Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009) ................. vii

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................14, 15

*Chattman v. Toho Tenax Am., Inc.*,
686 F.3d 339 (6th Cir. 2012) ....................................................................14, 15

*DeCoe v. Gen. Motors Corp.*,
32 F.3d 212 (6th Cir. 1994) ......................................................................19, 21

*DelCostello v. Int'l Bhd. Of Teamsters*,
462 U.S. 151 (1983)...................................................................................18, 22

*Griffith v. Franklin County*,
975 F.3d 554, 566 (6th Cir. 2020) ................................................................. vii

*Jones v. General Motors Corp.*,
939 F.2d 380 (6th Cir. 1991) ...........................................................................18

*Jones v. Johanns*,
264 F. App'x 463, 466 (6th Cir. 2007)..............................................................13

*Laster v. City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ...........................................................................13

*Martin v. Lake County Sewer Co.*,
269 F.3d 673 (6th Cir. 2001) .....................................................................19, 22

*Mickey v. Zeidler Tool*,
     516 F.3d 516 (6th Cir. 2008) ................................................................16

*Powers v. Cottrell, Inc.*,
     728 F.3d 509 (6th Cir. 2013) ................................................................21

*Riley v. FCA US LLC*,
     No. 3:21-CV-2046, 2022 WL 4465750 (N.D. Ohio Sept. 26, 2022) ..........22, 23

*Sharp v. Aker Plant Servs. Grp.*,
     Inc., 600 F. App'x 337, 341 (6th Cir. 2015) ......................................16

*United Steelworkers of America, AFL- CIO-CLC v. Rawson*,
     495 U.S. 362 (1990)................................................................................18

*Vadino v. A. Valey Eng'rs*,
     903 F.2d 253, 266 (3d Cir. 1990) ........................................................20

*Watts v. United Parcel Serv., Inc.*,
     701 F.3d 188 (6th Cir. 2012) ......................................................20, 21

**Statutes**

Americans With Disabilities Act ........................................................5, 20

Employee Retirement Income Security Act ...........................................19

Fair Labor Standards Act ...............................................................19, 20

Labor Management Relations Act ................................................*passim*

Ohio Revised Code Chapter 4112.............................................................5

**Other Authorities**

6th Cir. R. 32(a) ......................................................................................25

Fed. R. App. P. 32....................................................................................25

Fed. R. Civ. P. 12(b)(6).............................................................................2

Fed. R. Civ. P. 56 ....................................................................................14

## JURISDICTIONAL STATEMENT

The District Court exercised subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. On March 31, 2021, the District Court partially granted Defendant-Appellee General Motors, LLC's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), finding Plaintiff-Appellant Liggons failed to state claims of race and disability discrimination under federal law. (RE 16, Opinion and Order on Motion to Dismiss, PageID 109-115.) On September 27, 2023, the District Court granted summary judgment in GM's favor on Liggons' remaining retaliation claim. (RE 62, Opinion and Order on Motion for Summary Judgment, PageID 1445-1457.) Liggons filed a Notice of Appeal on October 27, 2023. (Notice of Appeal, RE 65, PageID 1470.) Because the District Court's September 27, 2023 award of summary judgment in GM's favor completely disposed of Liggons' case, this Court has jurisdiction over Liggons' appeal pursuant to 28 U.S.C. § 1291.

## **COUNTER-STATEMENT OF THE ISSUES PRESENTED**[1]

1.      Whether the District Court properly concluded that Liggons failed to state a *prima facie* case of retaliation because his protected activity was not known by the relevant decision makers or influenced by someone who did and because Liggons failed to provide any evidence of a causal connection between his protected activity and any adverse employment action.

2.      Whether the District Court properly dismissed Liggons' race and disability discrimination claims as preempted by § 301 of the LMRA because Liggons is pursuing contractual claims that are exclusively governed by the terms of a collective bargaining agreement and are time-barred when properly construed as § 301 claims.

---

[1] The District Court dismissed Liggons' federal race and disability discrimination claims under Civil Rule 12(b)(6), and granted summary judgment in favor of GM on Liggons' federal retaliation claim under Civil Rule 56. In each instance, the standard of review is *de novo*. *Griffith v. Franklin County*, 975 F.3d 554, 566 (6th Cir. 2020); *Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009).

## STATEMENT OF THE CASE

## I.    INTRODUCTION.

Appellant Shawn Liggons ("Liggons" or "Appellant"),[2] a former bargaining unit employee in General Motors, LLC's ("GM") Toledo, Ohio manufacturing and assembly facility, asserts discrimination and retaliation claims against GM that are devoid of factual and legal support. Because the facts or law do not support Liggons' claims, the District Court properly dismissed his federal race and disability discrimination claims, and granted summary judgment in favor of GM on Liggons' federal retaliation claim.

Liggons' primary allegations related to his race and disability discrimination claims concern discipline he received during his employment for his poor attendance. But there is no material dispute as to Liggons' attendance; rather, Liggons believes—without justification—that the applicable Collective Bargaining Agreement ("CBA") between GM and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), Memorandum of Understanding ("MOU"), and Shop Rules should be interpreted differently to negate the discipline he received during his employment. He also

---

[2] Liggons was represented by counsel when he filed his Complaint, as well as when the District Court granted GM's 12(b)(6) motion. (*See* RE 1 and RE 16.) The District Court subsequently granted counsel's Motion to Withdraw on August 25, 2021 (RE 27) and Liggons has proceeded *pro se* since.

believes—without evidence—the Court should interpret the CBA and MOU in a way that would have accelerated his progression to a higher wage rate. Indeed, in his Complaint, Liggons asserted that his suspensions were "not authorized per contractual language" and claims GM violated rights granted to him under the CBA.

As the District Court correctly concluded, Liggons failed to state federal race and disability discrimination claims upon which relief could be granted under Fed. R. Civ. P. 12(b)(6) for two reasons. First, Liggons' claims are exclusively governed by the terms of the CBA between GM and the UAW and should be litigated, if at all, under § 301 of the LMRA. The only plausible source for the rights he contends were injured is the CBA. And second, even if Liggons had properly filed his claims under § 301, his claims are time-barred because they were filed outside the applicable six month statute of limitations.

Liggons also alleged GM retaliated against him for filing charges of discrimination, but failed to provide any evidence that decision makers at GM were aware of his charges or were influenced by someone who was, or that there was a causal connection between his protected activity and suspensions which, again, resulted from undisputed attendance issues under the CBA and related agreements between GM and UAW. As the District Court correctly observed, there is no record evidence to support Liggons' belief that GM disciplined him for attendance

violations, and progressed him through the applicable wage schedule improperly, because of unlawful retaliation.

For the foregoing reasons, and as further detailed below, GM respectfully requests the Court affirm the decisions of the District Court.

## II.   <u>STATEMENT OF RELEVANT FACTS.</u>

### A.   **Liggons' Employment With GM.**

On February 22, 2016, GM hired Liggons as a temporary employee in its Toledo, Ohio manufacturing facility.[3] (*See* RE 39, Plaintiff's Deposition Transcript, PageID 244, ll. 2-9.; Ex. N.) On June 2, 2016, Liggons accepted a full-time position as a Quality Operator. (*See* RE 39, PageID 244; RE 39, Ex. O at PageID 399.) In this role, Liggons became a member of Co-Defendant United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), Local 14 (collectively, the "Union"). (*Id.*; *see also* RE 1, Compl. ¶ 9.) Liggons acknowledged in his deposition that as a member of the Union, his employment was subject to the terms of the National Collective Bargaining Agreement ("CBA") and Memoranda of Understanding ("MOU") executed between GM and the Union. (RE 39, PageID 282, ll. 6-23.) Additionally, he was subject to Shop Rules applicable to employees at the Toledo, Ohio facility, which delineate certain expectations for employee

---

[3] While not relevant to his claims, Liggons also held temporary employee positions with GM at various times between 2010 and 2012.

3

conduct as agreed to between GM and the Union. (RE 39, PageID 283, ll. 12-15; *see also* RE 39, Ex. U at PageID 428.) The CBA includes a four-step grievance procedure, culminating with arbitration, which is the exclusive mechanism for a bargaining-unit member to challenge GM's compliance with the CBA, MOU's, or Shop Rules. (RE 39, Ex. V, at PageID 429-447.)

Except for two temporary layoffs, Liggons remained continuously employed by GM as a Quality Operator until January 7, 2021, when GM terminated his employment after he admitted to recording a disciplinary interview in violation of GM's policy prohibiting recording work-related conversations.[4] (RE 42-1, Ex. A, PageID 735-44, ¶¶ 5-7 and Exs. 1-2.)

## B.    Plaintiff's History Of Attendance Violations And Corresponding Discipline.

The CBA governed the attendance of bargaining-unit members, including Liggons; specifically, through the "Memorandum of Understanding - Special Attendance Procedure," referred to as "Doc. 8." (RE 39, PageID 293, ll. 9-22; RE 39, Ex. S at PageID 419-425.) Doc. 8 applies to unexcused absences greater than 4 hours in length. (RE 39, Ex. S at PageID 420-421, ¶¶ 5-6.) Doc. 8 establishes a progressive discipline system for recurring attendance violations, with discharge as

---

[4] As discussed in Section II(D) below, Liggons filed the Complaint prior to his termination and he never sought leave to amend the Complaint to include any claim regarding GM's decision to terminate his employment.

the discipline for the sixth instance of an attendance violation. (*Id.* at PageID 423-424, ¶ 10.) Doc. 8 (in Paragraph 5) lists the types of absences specifically excluded from consideration, which includes, but is not limited to, approved FMLA leave and any absence protected by law, such as approved leave as a reasonable accommodation for a disability under the Americans With Disabilities Act and/or Ohio Revised Code Chapter 4112. (RE 39, PageID 420-421, ¶¶ 5-6.) Attendance violations roll-off of an employee's record after a period of time as defined by Doc. 8; however, the more instances of violations of Doc. 8, the longer the discipline remains on an employee's record, up to a maximum of 18 months. (RE 39, PageID 423-424, ¶ 10.)

Importantly, and by contrast, Doc. 8 does **not** govern an absence of less than 4 hours; rather, Shop Rule 9 applies to such absences. (RE 39, PageID 296, ll. 17-21; RE 39, PageID 298, ll. 2-13; *see also* Shop Rule 9 at RE 39, Ex. U at PageID 428.) Violations of Shop Rule 9 and Doc. 8 are subject to different progressive discipline processes. (RE 39, PageID 428.)

From 2016 through 2019, Liggons' attendance frequently violated Doc. 8 and Shop Rule 9, for which GM issued commensurate discipline under the CBA and Shop Rules. GM issued Plaintiff the following attendance-related discipline for violations of <u>Doc. 8</u>:

| Discipline Type | Action Date | Disciplinary Step |
|---|---|---|
| Absent Without Cause | July 11, 2016 | First Written Warning |
| Absent Without Cause | November 17, 2016 | Second Written Warning |
| Absent Without Cause | August 16, 2017 | Suspended for Balance of Shift + 7 days |
| Absent Without Cause | April 10, 2019 | Suspended for Balance of Shift + Two Weeks |
| Absent Without Cause | April 10, 2019 | 30 Day Suspension |

(RE 41-4, Page ID 708; *compare* RE 39, PageID 424 (establishing discipline for each instance of a Doc. 8 violation).)

Additionally, on January 23, 2018, Plaintiff reported to work late, but less than 4 hours late, and GM issued Liggons a 14-day suspension for violating Shop Rule 9. (RE 39, PageID 428; RE 41-4; and RE 39, Ex. AA at PageID 475.) The discipline GM issued to Liggons for violating Shop Rule 9 was separate from discipline it issued for violating Doc. 8. Liggons contends that his tardiness that day was due to a severe snowstorm; however, at his deposition, he admitted that nothing within the Shop Rules requires GM to modify discipline due to inclement weather:

> **Q.** Let me take a step back. So if we go back to Exhibit AA, the basis of the [January 23, 2018] violation is shop rule number 9, correct?
> **A.** Yes.
> **Q.** So not Doc. 8?
> **A.** Right.

6

**Q.** So then if we go to Exhibit U, which is the shop rules.
**A.** Uh-huh.
**Q.** What is it about Exhibit U, shop rules, that you think GM failed to consider when it issued this discipline?
**A.** The weather.
**Q.** Do the shop rules indicate that GM should consider the weather?
**A.** No.

(RE 39, PageID 331, l. 13 - PageID, 332.)

### C.    GM Addresses Liggons' Complaints He Was Not Properly Credited Under The Contractual Wage Schedule.

Like all "in-progression" bargaining-unit employees, Mr. Liggons' wages and benefits progressed in a manner set forth by the CBA. (RE 39, PageID 247-248; *see also* RE 39, Ex. O at PageID 399.) The relevant wage and benefit agreement for the years 2016 through 2021 is Exhibit 1 to the Stipulations of Fact filed jointly by Defendants. (RE 41-1.) Base wage rates for in-progression employees employed after 2015, like Liggons, are based on each employee's seniority with GM—for each twelve months that an employee actively works, the employee receives an increase in his base wage rate. (RE 41, PageID 697-698 at ¶ 2; RE 41-1; RE 41-2.) As confirmed by both GM and the Union in a March 4, 2016 Memorandum of Understanding Regarding Wage Progression, "It has been the long standing practice of the parties to calculate wage progression for newly hired employees…based on the employee's 'weeks worked[]'…[which] will continue to be defined as any time worked in a week[.]" (*Id.*) Put differently, any time an employee clocks-in for work, he receives one-week of credit towards the increase in base wage rate earned after

every 12-months of service. (*Id.*) An employee <u>must</u> clock-in and work to receive credit towards an increase in his base wage rate. (*Id.*) If an employee does not clock-in in a week—whether due to disciplinary suspension, approved leave, or temporary layoff—he does not accrue any credit towards an increase in his base wage rate simply because of the passage of time. (*Id.*)

On March 24, 2018, the Union filed a grievance on Liggons' behalf alleging he reached two years of service but did not receive the corresponding increase in his base wage rate. (RE 39, Ex. CC at PageID 477.) The Union filed an identical grievance on March 12, 2019, alleging Liggons reached three years of service but did not receive the corresponding increase in his base wage rate. (*Id.* at PageID 478.) In each instance, GM responded that Liggons' base wage rate was properly credited using the methodology in the March 4, 2016 Memorandum of Understanding Regarding Wage Progression. (RE 39, PageID 477-488.) The Union did not advance these grievances beyond the second-step of the grievance procedure, and both were deemed satisfactorily resolved on March 29, 2019. (*Id*.)  The Union did not arbitrate these claims, which is the exclusive mechanism to challenge GM's compliance with the CBA, MOU's, or Shop Rules. (RE 39 Ex. V, at PageID 429-447.)

Even though the Union did not advance these grievances, Liggons alleged during his deposition that GM retaliated against him by not properly progressing his wages under the CBA and corresponding MOU's. (RE 39, PageID 342, ll. 18-25.)

Liggons did not allege this in his Complaint. (*See* RE 1.) In describing the basis for this new allegation—i.e., that he should have advanced to the next step of the wage schedule on his annual work anniversary rate regardless of the weeks he actually worked—Liggons refused to acknowledge the enforceability of the March 4, 2016 Memorandum of Understanding Regarding Wage Progression and implied it was retroactively applied to him, stating "I know what the MOU says, but what I'm saying—or my response to that, that this was typed up after the fact." (RE 39, PageID 291, ll. 17-19.) Liggons never provided the District Court with evidence supporting his theory.

### D.    GM Terminates Liggons' Employment for Violating Its Unauthorized Recording Policy.

GM maintains an Unauthorized Recording Policy that prohibits "any video and/or audio recording, by any person, of any work-related conversation or meeting…without prior approval of GM management." (RE 42-1, PageID 738-39.) In his deposition, Plaintiff admitted he was "quite aware" of this policy. (RE 39, PageID 344, l. 23 - PageID 345, l. 6.)

On December 22, 2020, GM's Group Leader Phillip Caldwell and RWD Manufacturing Shift Lead Mike Helm directed Liggons to participate in a disciplinary interview about a possible error that caused downtime on the assembly line.  (RE 42-1, PageID 736, ¶ 6.) When Liggons arrived at the meeting, he recorded it using his phone. (*Id*.) As recounted by Liggons at his deposition, Caldwell told

9

Liggons "There will be no recording based on GM policy." (RE 39, PageID 345, ll. 22-25; RE 42-1, PageID 736, 741-42, ¶ 6.) Liggons challenged Caldwell to produce a physical copy of the Unauthorized Recording Policy, which Caldwell and Helms did not have on-hand at that moment. (RE 39, PageID 345 l. 22 – PageID 346, l. 9; RE 42-1, PageID 736, ¶ 6, 741-42.) Because they did not provide him with a physical copy of the policy immediately, Liggons told them he would record the meeting any way. (*Id.*) Caldwell and Helms stopped the disciplinary interview.  (*Id.*)

On January 7, 2021, Human Resources Director Tammi DeWildt conducted a second disciplinary interview with Liggons about his conduct during the December 22, 2020 disciplinary interview. (RE 42-1, PageID 736, 741-42, ¶ 6.) During this interview, Liggons admitted to Ms. DeWildt he recorded the December 22 meeting despite being instructed by his supervisors that doing so would violate GM policy:

> **T[ammi] D[eWildt]:** Were you informed that unauthorized recording is a violation of Company policy?

> **S[hawn] L[iggons]:** I asked for documented [sic] and none was provided, and he said he didn't have access to any of it[.]

> **TD:** Did you record that conversation?

> **SL:** At that point yes.

(RE 42-1, PageID 741-42, ¶ 6.) GM terminated Liggons' employment for violating GM's Unauthorized Recording Policy. (RE 42-1, PageID 737, 744, ¶ 8.) Liggons' termination is not part of this lawsuit.  (RE 62, PageID 1446, n.2.)

**E.    Liggons' History of Filing Charges of Discrimination, Harassment, and Retaliation Against GM.**

While employed by GM, Liggons filed several charges of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), all of which were dismissed or withdrawn:

| Agency | Date Filed | Plaintiff's Allegations | Result | Source |
|---|---|---|---|---|
| OCRC/ EEOC | October 5, 2017 | The Doc. 8 discipline issued on August 16, 2017 was improper and constituted racial discrimination. | Dismissed on July 26, 2017. | RE 39, Ex. A and B at PageID 369-371. |
| OCRC/ EEOC | April 30, 2018 | The Shop Rule 9 discipline issued on January 12, 2018 was improper, constituting racial discrimination and retaliation for October 5, 2017 Charge. | Dismissed February 21, 2019 | RE 39, Ex. C and D at PageID 372-374. |
| OCRC/ EEOC | May 29, 2019 (amended) | Denied pay raises in violation of the CBA and corresponding MOU, constituting racial discrimination and retaliation for previous charges filed with the Commission. | Liggons requested withdrawal of the Charge; dismissed November 21, 2019 | RE 39, Ex. E, F, and G at PageID 375-378. |
| OCRC/ EEOC | July 24, 2020 | A co-worker discriminated against him by refusing to let Liggons enter the building using the co-worker's badge-swipe; GM's determination that Liggons failed a test required to be promoted to a | Dismissed on March 11, 2021. | RE 39, Ex. H and I at PageID 379-387. |

| | | Level 4 Quality Operator was improper. | | |
|---|---|---|---|---|
| OCRC/ EEOC | April 1, 2021 | GM improperly terminated Liggons' employment. | Dismissed on November 18, 2021 | RE 39, Ex. J and K at PageID 388-392. |

## III.   <u>SUMMARY OF THE ARGUMENT</u>.

Liggons cannot establish a *prima facie* case of retaliation because he failed to offer evidence that a decision-maker knew of his protected activity or was influenced by someone who did and he failed to offer any record evidence of a causal connection between his protected activity and an adverse employment action. Even if Liggons could establish a *prima facie* case, which he cannot do, his retaliation claim would still fail because GM had legitimate, non-discriminatory reasons for all adverse actions it took with respect to Liggons and there is no record evidence such reasons are pretext. Accordingly, the District Court properly granted summary judgment in GM's favor on Liggons' retaliation claim.

Liggons' race and disability discrimination claims were properly dismissed as preempted by § 301 of the Labor Management Relations Act ("LMRA") because they are exclusively governed by the terms of a collective bargaining agreement, and his claims are time-barred when properly construed as § 301 claims. As further detailed below, Liggons' discrimination claims necessarily depend on his assumption that the terms of the CBA entitle him to what he claims he did not receive

12

based upon his race and disability. Liggons himself alleged in his Complaint that his suspensions were "not authorized per contractual language" and the rights he seeks to enforce are established under the CBA. Because Liggons was pursuing contractual claims under the CBA, the District Court properly dismissed Liggons' discrimination claims.

## IV.   <u>ARGUMENT.</u>

### A.   The District Court Correctly Concluded Liggons Failed to Establish a *Prima Facie* Case of Retaliation.

The District Court correctly concluded Liggons could not establish a *prima facie* case of retaliation against GM. To establish a *prima facie* case of retaliation, Liggons must show: "'(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (*quoting Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)) (further citation omitted). If Liggons establishes a *prima facie* case, the burden of production shifts to the Defendants to identify a legitimate, non-discriminatory reason for the materially adverse actions. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).

The burden then returns to Liggons to show that the Defendants' proffered reason is a pretext for discrimination. *Id.*

As the District Court ruled, and further explained below, Liggons' *prima facie* retaliation claim fails against GM on the second and fourth elements. And even if Liggons could establish a *prima facie* case of retaliation, which he cannot do, there is no record evidence of pretext.

### 1.    Liggons cannot establish a decision-maker knew about his protected activity.

The District Court correctly concluded Liggons could not establish the second prong of his retaliation claim because he failed to establish that any decision maker knew of his protected activity or was influenced by someone who did. GM met its Rule 56 burden by demonstrating the absence of evidence supporting an essential element of Liggons' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As explained by the District Court, under the cat's paw theory of liability, an employer may be held liable for a supervisor's discriminatory conduct toward the plaintiff if the plaintiff provides proof of a "causal nexus" between the supervisor's discriminatory animus and the ultimate decision maker's decision to discipline the plaintiff. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350-51 (6th Cir. 2012) (citations and internal quotation marks omitted). A plaintiff pursuing a cat's paw theory of liability must show a supervisor engaged in discriminatory conduct and

that discriminatory conduct was a proximate cause of the ultimate materially adverse action. *Id*. at 351.

Liggons' retaliation claim fails on this prong. Although during discovery he produced the names of 27 individuals whom he thought ***might*** have knowledge of the events that led to the discipline he received and that formed the basis of his charges, he failed to identify which individuals knew of his OCRC charges or protected activity. As a matter of law, his retaliation claim fails for this reason alone because it is Liggons' burden to provide some evidence of knowledge to establish a genuine issue of material fact for purposes of defeating a properly supported motion for summary judgment. *See Celotex*, 477 U.S. at 323. Liggons does not meaningfully respond to this legal defect in his appellate brief and there is no basis to support a reversal of the District Court's sound analysis with respect to the second prong of Liggons' *prima facie* retaliation claim.

### 2.    Liggons cannot establish a causal connection between his protected activity and adverse employment action.

Second, even if Liggons could establish decision makers had knowledge of his protected activity, which he cannot do, his retaliation claim still fails because there is no evidence of a causal connection between his protected activity and an adverse employment action.

Not only is there no evidence showing if or when any decision maker received notice of Liggons' protected activity, but the protected activity also occurred either

after or months before the alleged materially adverse actions. Liggons filed his first OCRC charge in October 2017. (RE 39, Ex. A and B at PageID 369-371.) The next materially adverse action occurred over three months later, in mid-January 2018, when GM suspended him for tardiness under Shop Rule 9. He filed an OCRC charge regarding that disciplinary suspension on April 30, 2018. (RE 39, Ex. C and D at PageID 372-374.). Liggons does not identify another materially adverse action until a year later in April 2019, when he received two Doc. 8 suspensions. Liggons filed and amended his third OCRC charge over a month later on May 29, 2019 (*Id.* at 191), but he does not identify another materially adverse action prior to May 2020, when GM allegedly demoted him from a team leader position.

As observed by the District Court, the passage of time alone does not "categorically preclude[] [a] finding [of] causation." *Sharp v. Aker Plant Servs. Grp.*, *Inc.*, 600 F. App'x 337, 341 (6th Cir. 2015). Liggons still may establish a genuine dispute of material fact by coupling evidence of temporal proximity with "other evidence of retaliatory conduct." *Mickey v. Zeidler Tool*, 516 F.3d 516, 525 (6th Cir. 2008). But his alleged belief that the Defendants' actions were retaliatory (RE 55, PageID 1409), is unsupported by any evidence in the record. Thus, Liggons' retaliation claim again fails because there is no record evidentiary support of a causal connection upon which a reasonable fact-finder could rely.

### 3.    GM can identify a legitimate non-discriminatory reason for adverse actions and there is no evidence of pretext.

The District Court did not address pretext in its decision because it concluded Liggons could not meet his burden of establishing a *prima facie* case of retaliation. (RE 62, PageID 1452-57.) But even if Liggons could establish a *prima facie* case, which he cannot do, GM had non-discriminatory reasons for the materially adverse employment actions taken against Liggons. Specifically, Liggons had a long history of attendance issues in violation of the CBA and related agreements and GM's terminated his employment for violating GM's Unauthorized Recording Policy. (RE 42-1, PageID 737, 744, ¶ 8.)

There is nothing in the record suggesting that GM was motivated by retaliatory intent in making any of its decisions to discipline Liggons for attendance violations. As a result, Liggons cannot demonstrate such reasons were pretext for discrimination, and his retaliation claim still fails. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d at 542.

### B.    The District Court Correctly Dismissed Liggons' Race and Disability Discrimination Claims.

The District Court correctly dismissed Liggons' race and disability discrimination claims as preempted by § 301 of the Labor Management Relations Act ("LMRA") because the bases for these claims are exclusively governed by the terms of a collective bargaining agreement, and such claims are time-barred when

properly construed as § 301 claims. (RE 16, PageID 112-15.) While not properly pled as claims under the LMRA, Liggons' discrimination claims are preempted and displaced by § 301 of the LMRA because proof of those claims depends exclusively on the Court's interpretation and/or analysis of the terms of an agreement made between the parties to a labor contract, namely the CBA and corresponding memoranda of understanding and local supplements. In addition, the adverse employment actions Liggons identifies depend solely upon his rights under the CBA insofar as there is no other plausible source for the rights he contends were injured.

This transforms Plaintiff's lawsuit into a "hybrid" § 301 claim. *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991). A hybrid § 301 claim presents claims against the employer for breach of a labor contract and against the union for breach of the duty of fair representation. *Id*. These two claims are "inextricably interdependent," and require courts to analyze them as one hybrid § 301 claim. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65 (1983).

While preemption under § 301 of the LMRA traditionally applies to state law contract claims, the Supreme Court of the United States has noted that "the preemptive force of § 301 extends beyond state-law contract actions." *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990). Section 301 preempts claims that are "inextricably intertwined with consideration of the terms" of a collective bargaining agreement or "substantially dependent on

18

analysis" of such a union contract. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). In these situations, courts look "to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as [another type of claim]." *Id.*

This Court has eschewed application of other federal laws in favor of the LMRA where the facts of a claim are based on rights created by a CBA. For example, in *Aloisi v. Lockheed Martin Energy Systems, Inc.*, 321 F.3d 551, 556 (6th Cir. 2003), this Court rejected the plaintiff's attempt to characterize her claims as falling under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, and instead found her claim was preempted by § 301 of the LMRA because the claim was based solely on the employer's failure to comply with a medical arbitration procedure under the collective bargaining agreement. Likewise, Liggons here contends that GM failed to follow contractual language in the CBA when issuing discipline to him. (RE 1, PageID Nos. 4-13,  ¶¶ 12, 14, 22, 24, 26, 36, 38, 40, 50, 52, 54, and 61.)

In *Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001), this Court considered a plaintiff's hybrid § 301 claim and corresponding claim under the Fair

19

Labor Standards Act emanating from allegations the employer withheld wages in violation of the CBA. This Court dismissed the suit because the plaintiff did not meet the applicable 6-month statute of limitation under the LMRA, and importantly, declined to apply the Fair Labor Standards Act to the claim, holding "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA." *Id*. at 679, *citing Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990); *c.f. Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 192 (6ᵗʰ Cir. 2012)(declining to dismiss an independently asserted ADA claim not contractually based).

 *Watts*, however, is easily distinguishable on the facts for several reasons. First, Watts did not sue her union and did not make allegations related to a breach of the duty of fair representation. Here, Liggons named the Union as a defendant and admitted in his Appellate Brief that his claims are, in part, "hybrid § 301 / fair representation" claims. (Brief of Appellant, App. Doc. 16, pg. 8; *see also* RE 1, PageID 1.) Second, this Court concluded that Watts was not pursuing contractual claims under the collective bargaining agreement, and that she asserted a statutorily independent claim under the Americans With Disabilities Act. *Watts*, 701 F.3d at 192-93. Here, Liggons' own Complaint and Appellate Brief make clear that his claims were asserted under the CBA. (*See* RE 1, PageID Nos. 4-13, ¶¶ 12, 14, 22, 24, 26, 36, 38, 40, 50, 52, 54, and 61 (highlighting repeated allegations that

Defendants' actions were not authorized by contractual language under the CBA); *see also* Brief of Appellant, App. Doc. 16, pg. 8 (admitting his claims are, in part, "hybrid § 301 / fair representation" claims.)) Finally, in *Watts* this Court noted there was no evidence of a mandatory arbitration agreement under the collective bargaining agreement at issue. *Watts*, 701 F.3d at 192-93. Here, the CBA includes a four-step grievance procedure, culminating with arbitration, which is the exclusive mechanism for a bargaining-unit member to challenge GM's compliance with the CBA, MOU's, or Shop Rules. (RE 39, Ex. V at PageID 429- 447.)

This Court uses a two-step approach for determining whether claims are preempted by § 301:

> First, the District Court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criteria is satisfied, § 301 preemption is warranted.

*DeCoe*, 32 F.3d at 216 (citations omitted). Preemption depends upon whether the essence of the claims implicate a dispute that is "inextricably intertwined" with interpretation of a labor contract, as opposed to one merely "tangentially related." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 516 (6th Cir. 2013) (citations omitted.).

Here, Liggons' discrimination claims are inextricably intertwined with the provisions of the CBA, and cannot be resolved absent interpretation and application

of the CBA. He claims GM did not give him a scheduled pay raise in October 2018, and disciplined him in a manner inconsistent with the terms of the CBA due to absences in 2016, 2018, and 2019. As detailed in GM's Motion to Dismiss, the CBA governs every one of these issues. (RE 12, PageID 48-53.)

Critically, Liggons even alleged in his complaint that his suspension was "not authorized per contractual language" (RE 1, PageID 4-7, ¶¶ 12, 22, 36, and 50), leaving no question that such claims are contractual disputes governed by § 301 of the LMRA. Although he attempts to characterize his discrimination claims as distinct from a LMRA claim, he fails to explain how the substance of his allegations are separate from the CBA, and Sixth Circuit precedent establishes that such claims are § 301 claims subject to a six-month statute of limitations.[5] *Martin*, 269 F.3d at 679.

In *Riley v. FCA US LLC*, No. 3:21-CV-2046, 2022 WL 4465750 (N.D. Ohio Sept. 26, 2022) (J. Helmick), the District Court detailed its LMRA preemption

---

[5] The statute of limitations for filing a hybrid § 301 claim is six months from the accrual of the claim. *DelCostello*, 462 U.S. at 164-65. Liggons filed his Complaint on June 2, 2020, so his claims are timely only if they accrued on or after December 2, 2019. (RE 1, PageID 1.) Liggons' claims stem from the alleged failure to award him a pay raise on or before October 1, 2018. (RE 1, ¶ 8, PageID 4.) Liggons knew or should have known GM allegedly acted in an inappropriate manner 20 months before he filed his Complaint, and is therefore untimely by a full year. While Liggons cites several alleged instances in which GM disciplined him for attendance violations in violation of the CBA, the most recent instance allegedly occurred on April 10, 2019, making this claim untimely by over 7 months.

22

analysis and distinguished *Riley* from *Liggons*. *Id*. at *2. As the District Court

explained in *Riley*:

> The adverse employment actions Liggons identifies depend upon his rights under the CBA. While he attempts to deflect attention from the CBA, he offers no other plausible source for the rights he contends were injured.... [A] review of Liggons' allegations demonstrates that the rationale for finding § 301 applied in that case do not exist here… (noting Liggons alleged his suspensions were "not authorized per contractual language"; certain disciplinary sanction was "contractually void"; the series of disciplinary and wage issues "clearly breached the labor contractual provisions.").

*Riley*, at *2. (quoting RE 16, PageID 113.)

The District Court subsequently concluded that its analysis in *Liggons* was

not applicable in *Riley* because the plaintiff in *Riley* sought to enforce substantive

rights provided by federal and state law—not a collective bargaining agreement. *Id*.

The District Court's sound analysis in *Riley* is consistent with other Sixth Circuit

precedent and provides further clarity as to why Liggons' discrimination claims are

preempted because Liggons' claims are for breach of the CBA.

For the foregoing reasons, Liggons' claims alleging GM discriminated against

him on the basis of his race and disability in violating his rights under the CBA were

properly dismissed as preempted by § 301 of the LMRA.

## V.    <u>CONCLUSION</u>.

GM requests that the Court affirm the decisions of the District Court dismissing Liggons' discrimination claims and awarding summary judgment to GM on Liggons' retaliation claim.

Respectfully submitted,

/s/ *Samuel H. Ottinger*
Ellen Toth (0056157)
Samuel H. Ottinger (0099034)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
216-241-6100
216-357-4733 (FAX)
Email: ellen.toth@ogletree.com
       samuel.ottinger@ogletree.com

*Attorneys for Appellee General Motors, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Appellee General Motors, LLC certifies, pursuant to 6th Cir. R. 32(a), that Appellee's Brief complies with the limitation of Fed. R. App. P. 32(a)(7)(B) in that, excluding the items enumerated in Fed. R. App. 32(f), the Brief contains less than 13,000 words.  In addition, this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman in 14 point size, with footnotes in Times New Roman 14 point size.

*/s/ Samuel H. Ottinger*
Ellen Toth (0056157)
Samuel H. Ottinger (0099034)

*One of the Attorneys for Appellant*
*General Motors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2024, a copy of the foregoing was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Notice of this filing will be sent to the following parties via electronic mail and/or through the Court's electronic filing system. Additionally, I served the foregoing by electronic mail and U.S. Mail upon the following:

Shawn L. Liggons
912 Kings Mill Road, #844
Greenwood, IN 46142
slliggons@yahoo.com
*Pro Se Plaintiff*

Kristin Seifert Watson, Esq.
Lane C. Hagar, Esq.
Cloppert, Latanick, Sauter & Washburn
225 E. Broad Street
Columbus, OH 43215
kwatson@cloppertlaw.com
lhagar@cloppertlaw.com
*Attorneys for Defendant United Automobile, Aerospace and*
*Agricultural Implement Workers of America Local 14*


/s/ Samuel H. Ottinger
*One of the Attorneys for Defendant*
*General Motors, LLC*

26

# ADDENDUM I

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Description of Entry | Date Document Entered | PageID Range |
|---|---|---|---|
| 1 | Complaint | 06/02/20 | 1-18 |
| 12 | GM's Motion to Dismiss | 08/03/20 | 44-88 |
| 13 | Liggons' Opposition to GM's Motion to Dismiss | 08/17/20 | 89-99 |
| 14 | GM's Reply in Support of Motion to Dismiss | 08/31/20 | 100-105 |
| 16 | Memorandum Opinion and Order on Motion to Dismiss | 03/31/21 | 109-115 |
| 19 | UAW's Motion for Partial Judgment on the Pleadings | 04/09/21 | 131-134 |
| 22 | Liggons' Opposition to the UAW's Motion for Partial Judgment on the Pleadings | 05/03/21 | 141-148 |
| 23 | UAW's Reply in Support of Motion for Partial Judgment on the Pleadings | 05/10/21 | 149-152 |
| 24 | Memorandum Opinion and Order on Motion for Partial Judgment on the Pleadings | 07/27/21 | 153-156 |
| 27 | Order Granting Motion to Withdraw as Counsel | 08/25/21 | 161-162 |
| 39 | Notice of Filings Plaintiff's Deposition Transcript | 01/19/23 | 185-479 |
| 41 | Defendants' Stipulations of Fact | 01/20/23 | 697-708 |
| 42 | GM's Motion for Summary Judgment | 01/20/23 | 709-744 |
| 43 | UAW's Motion for Summary Judgment | 01/20/23 | 745-784 |
| 55 | Liggons' Brief In Opposition to UAW's Motion for Summary Judgment | 04/18/23 | 1385-1414 |

60211372.v2-OGLETREE

| 59 | UAW's Reply in Support of Motion for Summary Judgment | 05/11/23 | 1422-1435 |
|----|-------------------------------------------------------|----------|-----------|
| 60 | GM's Reply in Support of Motion for Summary Judgment | 05/12/23 | 1436-1442 |
| 62 | Memorandum Opinion and Order on Motion for Summary Judgment | 09/27/23 | 1445-1457 |
| 65 | Liggons' Notice of Appeal | 10/27/23 | 1470 |