No. 23-3890

In the

# United States Court of Appeals
## For the Sixth Circuit

_____

SHAWN LIGGONS
*Plaintiff-Appellant*

v.

GENERAL MOTORS, LLC; UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 14
*Defendants-Appellees*

**On Appeal from the United States District Court
for the Northern District of Ohio
Case No. 3:20-cv-01208**

_____

**BRIEF OF DEFENDANT-APPELLEE UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, LOCAL 14 (UAW LOCAL 14)**

Kristin Seifert Watson     (0078032)
Lane C. Hagar             (0101110)
Cloppert, Latanick, Sauter & Washburn
225 East Broad Street
Columbus, Ohio 43215
Telephone:  (614) 461-4455

Attorneys for Defendant-Appellee UAW
Local 14

**<u>DISCLOSURE OF CORPORATE AFFILIATIONS</u>**
**<u>AND FINANCIAL INTEREST</u>**

Pursuant to 6th Cir. R. 26.1, UAW Local 14 makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? <u>No</u>.

   If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   Not Applicable.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? <u>No</u>.

   If yes, list the identity of such corporation and the nature of the financial interest:

   Not Applicable.


<u>/s/ Kristin Seifert Watson</u>                          <u>2/15/2024</u>
Kristin Seifert Watson     (0078032)                (Date)

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES .................................................................iv

STATEMENT OF OPPOSITION TO ORAL ARGUMENT ............................... viii

I.     STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................1

II.    STATEMENT OF THE CASE ......................................................1

III.   STATEMENT OF THE FACTS ....................................................3

     A.  Liggons incurred numerous attendance disciplinary actions during his employment under the negotiated attendance policy. .............................3

     B.  Liggons' 2018 and 2019 wage increases were delayed, and the Union grieved to ensure they were properly calculated .....................................7

     C.  Liggons filed several charges against the Parties hereto .........................8

IV.    SUMMARY OF THE ARGUMENT ............................................10

V.     ARGUMENT...................................................................12

     A.  Standard of Review................................................................12

     B.  The First Issue:  Whether the District Court properly dismissed Liggons' race and disability discrimination claims against the Union as untimely duty of fair representation claims under Section 301 of the LMRA ...............................................................15

          1.  The District Court correctly construed Liggons' discrimination claims as Section 301 claims ...........................................16

2.   The Court properly concluded that Liggons' discrimination claims, construed as Section 301 claims, were time-barred by the applicable statute of limitations......................................................20

C.   The Second Issue:  Whether summary judgment was appropriate on this Record because Liggons cannot establish a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework ..22

1.   The District Court properly determined that the Union took no materially adverse action against Liggons .......................................24

2.   The District Court correctly determined that there was no causal connection between Liggons' protected activity and any materially adverse action. ..............................................................27

D.   The Third Issue:  Whether summary judgment was also appropriate on this Record because Liggons cannot establish that the Union's legitimate non-discriminatory reasons were pretext for retaliation........29

VI.    CONCLUSION................................................................32

CERTIFICATE OF COMPLIANCE........................................34

CERTIFICATE OF SERVICE ..............................................35

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............36

## TABLE OF AUTHORITIES

**Cases**:                                                                    Page(s)

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
    280 F.3d 619 (6th Cir. 2002) ..................................................12, 13, 14

*Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 (6th Cir.
    1994) ....................................................................................................26

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ....................24, 27

*Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir. 2009) ....................................29

*Cone v. Tessler*, 800 Fed.Appx. 405 (6th Cir. 2020) ............................................20

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music
    Ctr.*, 109 F.3d 275 (6th Cir. 1997)....................................................................13

*Day v. Norwood City Sch. Dist.*, No. 1:12-cv-273, 2013 WL
    5656198 (S.D. Ohio Oct. 16, 2013)....................................................................13

*DelCostello v. International Broth. of Teamsters*, 462 U.S. 151
    (1983)....................................................................................................20

*Dragomier v. Local 1112 UAW*, 620 Fed.Appx. 517
    (6th Cir. 2015) ................................................................................................27

*Dudich v. United Auto Workers Local Union No. 1250*, 454
    F.Supp.2d 668 (N.D. Ohio 2006) ................................................................21

*Ely v. Newell-Rubbermaid, Inc.*, 50 Fed.Appx. 681 (6th
    Cir. 2002)..................................................................................................26

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ................................................24

*Jaffke v. Dunham*, 352 U.S. 280 (1957)................................................................15

*J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55 (1940) ...........................14

*Jones v. Gen. Motors Corp.*, 939 F.2d 380 (6th Cir. 1991) .....................17

*Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856
    (6th Cir. 1988) .................................................19

*JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir.
    2007) ......................................................13

*Kelsey v. FormTech Indus.*, 305 Fed.Appx. 255 (6th Cir. 2008)..........................27

*Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 Fed.Appx.
    352 (6th Cir. 2001) .......................................21

*Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000) .............................20

*Laster v. City of Kalamazoo*, 764 F.3d 714 (6th Cir. 2014) ...................23

*Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673 (6th Cir.
    2001) ......................................................19

*McNeil v. United States*, 508 U.S. 106 (1993)...........................................10

*Metz v. Tootsie Rolls Indus., Inc.*, 715 F.2d 299 (7th Cir. 1983)...........................21

*Michigan Protection and Advocacy Service, Inc. v. Babin*, 18
    F.3d 337 (6th Cir. 1994) .................................14

*Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335 (6th Cir. 1993) ..............................14

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) ...................................29

*Noble v. Chrysler Motors Corp.*, 32 F.3d 997 (6th Cir. 1994) ...............................21

*Olympic Fastening Sys., Inc. v. Textron, Inc.*, 504 F.2d 609 (6th
    Cir. 1974)..................................................15

*Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015)...........................................14

*Paskavan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233 (6th Cir. 1991) .................................................13

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011) ..........................14

*Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214 (6th Cir. 1985) .................................................14

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ................................20

*SEC v. Blackwell*, 291 F.Supp.2d 673 (S.D. Ohio 2003) .......................................14

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291 (6th Cir. 2008) .................................................13

*Smith v. Highland Park Federation of Teachers*, 833 F.2d 1013 (Table), 1987 WL 38242 (6th Cir. Nov. 9, 1987) .................................25, 30

*Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962) ..................................................19

*Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957)................................17

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545 (6th Cir. 2008) .................................................12, 13

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ................................................13

*U.S. S.E.C. v. Maxwell*, 341 F.Supp.2d 941 (S.D. Ohio 2004) ..............................14

*Vaca v. Sipes*, 386 U.S. 171 (1967) .................................................19, 25, 26, 27, 31

*Watts v. United Parcel Serv., Inc.*, 701 F.3d 188 (6th Cir. 2012) ....................18, 19

*Willliams v. Zumbiel Box and Packaging Co.*, Case No. 04-cv-675, 2005 WL 8161971 (S.D. Ohio Feb 3. 2005) ....................................9, 10

**Statutes:**

29 U.S.C. § 185 .................................................................................................passim

42 U.S.C. § 2000 *et seq.*....................................................................................passim

42 U.S.C. § 12101 *et seq.*..................................................................................passim

42 U.S.C. § 1981 .................................................................................................passim

**Other Authorities:**

Federal Rules of Civil Procedure, Rule 12 ...............................................13

Federal Rules of Civil Procedure, Rule 56 ...............................................13

## STATEMENT OF OPPOSITION TO ORAL ARGUMENT

Defendant-Appellee United Automobile, Aerospace and Agricultural Implement Workers of America Local 14 ("UAW Local 14" or the "Union") opposes Plaintiff-Appellant Shawn Liggons' ("Liggons") request for oral argument. This case does not present any novel legal theory or complicated facts for review and consideration. This Court should deny the request for oral argument.

## I.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court properly dismissed Liggons' race and disability discrimination claims against the Union as untimely duty of fair representation claims under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

2.    Whether summary judgment was appropriate on this Record because Liggons cannot establish a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework.

3.    Whether summary judgment was also appropriate on this Record because Liggons cannot establish that the Union's legitimate non-discriminatory reasons for its actions were pretext for retaliation.

## II.    STATEMENT OF THE CASE

UAW Local 14 files this Brief in Opposition to Liggons' Appeal. Liggons commenced an action in the United States District Court for the Northern District of Ohio on June 2, 2020. (Complaint, Record Entry ("RE") # 1, Page ID # 1-14). Liggons' Complaint contained claims against General Motors, LLC ("GM") and UAW Local 14 for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), and retaliation in violation of Title VII.

1

On August 3, 2020, GM filed a Motion to Dismiss Liggons' claims against it. (GM Motion to Dismiss, RE # 12, Page ID # 44-55). On March 31, 2021, the District Court granted GM's Motion to Dismiss with regard to Liggons' race and disability discrimination claims. (RE # 16, Page ID # 109-115). On April 9, 2021, UAW Local 14 filed a Motion for Partial Judgment on the Pleadings for Liggons' race and disability discrimination claims against it. (UAW Local 14 Motion for Partial Judgment on the Pleadings, RE # 19, Page ID # 131-134). On July 27, 2021, the District Court granted the Union's Motion and dismissed Liggons' race and disability discrimination claims against UAW Local 14. (RE # 24, Page ID # 153-156).

Both Defendants-Appellees filed Motions for Summary Judgment on January 20, 2023, for Liggons' remaining Title VII retaliation claim. (UAW Local 14 Motion for Summary Judgment, RE # 43, 43-1, Page ID # 745-746, 747-774; GM Motion for Summary Judgment, RE # 42, Page ID # 709-734). In an Opinion and Order dated September 27, 2023, the District Court granted the Defendants-Appellees' Motions for Summary Judgment in their entirety. (RE # 62, Page ID # 1445-1457). Liggons filed a Notice of Appeal to this Court on October 27, 2023. (Notice of Appeal, RE # 65, Page ID # 1470).

### III.    STATEMENT OF THE FACTS

Liggons began working at GM at its Toledo Propulsion Systems facility (the "Plant") in February 2016 as a temporary employee prior to becoming a permanent in-progression employee in June 2016. (July 19, 2022, Deposition of Shawn Liggons ("Liggons Depo. I"), RE # 39, Page ID # 246-247, 398-399).[1] The terms and conditions of Liggons' employment with GM were subject to the National Collective Bargaining Agreement between GM and the International Union, UAW ("National Agreement"), the Local Collective Bargaining Agreement between GM and UAW Local 14 ("Local Agreement"), and the Shop Rules applicable to employees at the Plant ("Shop Rules"). (Liggons Depo. I, RE # 39, Page ID # 282-286, 298).

### A.    **Liggons incurred numerous attendance disciplinary actions during his employment under the negotiated attendance policy.**

Throughout his employment with GM, Liggons received disciplinary actions related to his attendance on multiple occasions. As the District Court aptly summarized:

> [T]here are two applicable attendance policies – Doc. 8 and Shop Rule 9. Absences of less than four hours are governed by Shop Rule 9, which was adopted pursuant to a Local Memorandum of

---

[1] GM deposed Liggons on July 19, 2022. That deposition is hereinafter referred to as "Liggons Depo. I." The deposition continued and included Union questioning on October 17, 2022. That deposition is hereinafter referred to as "Liggons Depo. II."

Understanding between the Union and the Toledo GM plant dated October 4, 2007. (Doc. No. 39 at 242-44). Shop Rule 9 prohibits employees from "[r]eporting late to work." (*Id.* at 244).

Doc. 8, more formally known as the Memorandum of Understanding – Special Procedure for Attendance, is a collectively bargained attendance policy governing unexcused absences of four hours or more. (*Id.* at 235-41). Doc. 8 contains a progressive discipline system under which an employee's first and second unexcused absences lead to a written warning. (*Id.* at 240). Beginning with the third unexcused absence, an employee will be suspended for the remainder of the shift plus an additional period. (*Id.*). If an employee accumulates six unexcused absences at one
time, the employee's employment may be terminated. (*Id.* at 240-41).

Absences are removed from the employee's record after specific periods of time. (*Id.*). The first unexcused absence remains on the employee's record for six months, as long as the employee does not accumulate any other unexcused absences. A second accumulated unexcused absence increases the time period to twelve months, and the time on record period increases to eighteen months with the third unexcused absence. (*Id.*).

(September 27, 2023, Opinion and Order, RE # 62, Page ID # 1446-1447).

Pursuant to Doc. 8, the time that an absence remains on an employee's record for disciplinary purposes is "extended by periods of leave." (Liggons Depo. I, RE # 39, Page ID # 424). Grievances are "strictly limited" under Doc. 8 and can only be filed in response to a Doc. 8 disciplinary action if the procedure is improperly administered. (Liggons Depo. I, RE # 39, Page ID # 420). Doc. 8 attendance disciplinary actions are handled on a separate track from all other disciplinary

matters, including violations of Shop Rule 9. (Liggons Depo. II, RE # 40, Page ID # 566; Liggons Depo. I, RE # 39, Page ID # 420-421).

Liggons incurred the following Doc. 8 attendance disciplinary actions between 2016 and 2019:

- First written warning for first absence/instance for an unexcused absence on June 29, 2016. Action administered on July 11, 2016, and scheduled to be removed from his record on December 29, 2016. (Liggons Depo. II, RE # 40, Page ID # 631).

- Second written warning for second absence/instance for an unexcused absence on September 31 [sic], 2016. Action administered on November 17, 2016, and scheduled to be removed from his record on or about September 30, 2017. (Liggons Depo. II, RE # 40, Page ID # 632).

- Suspension for balance of shift plus seven days for third absence/instance for an unexcused absence on August 4, 2017. Action administered on August 16, 2017. (Liggons Depo. II, RE # 40, Page ID # 633).[2] This action was ultimately not scheduled to be removed from Liggons' record until at least May 2019 due to extensions by multiple leaves of absence, including:

  o Short term disability from November 9, 2017-November 14, 2017;

  o Short term disability from January 20, 2018-February 26, 2018;

  o Short term disability from April 6, 2018-April 15, 2018; and

---

[2] In his Brief, Liggons complains that this disciplinary action was improperly administered as a suspension for seven (7) work days rather than seven (7) calendar days. But this disciplinary action is not part of this litigation—the two disciplinary actions issued on April 10, 2019, for his fourth and fifth absences/instances—are the only actions at issue. *See generally* Complaint, RE # 1.

- o Short term disability from December 31, 2018-February 24, 2019. (Liggons Depo. II, RE # 40, Page ID # 634).

- Suspension for balance of shift plus two (2) weeks for fourth absence/instance for unexcused absences on March 29, 2019, and April 1, 2019. Action administered on April 10, 2019. (Liggons Depo. II, RE # 39, Page ID # 473).

- Suspension for balance of shift plus thirty (30) days for fifth violation for unexcused absences on April 3, 2019, and April 4, 2019. Action administered on April 10, 2019. (Liggons Depo. II, RE # 39, Page ID # 474).

Liggons was also issued discipline under Shop Rule 9 for being tardy on January 12, 2018. (Liggons Depo. I, RE # 39, Page ID # 475). That discipline had no impact on Liggons' Doc. 8 disciplinary track and was not part of the OCRC Charge relevant to this matter. (Liggons Depo. II, RE # 40, Page ID # 566-567, 630; Complaint, Ex. C, RE # 1-3, Page ID # 17).

While UAW Local 14 filed numerous grievances on Liggons' behalf during his employment with GM, it did not grieve any of the Doc. 8 disciplinary actions Liggons received because they were properly administered at the time issued. (Liggons Depo. II, RE # 40, Page ID # 531-532, 629; Liggons Depo. I, RE # 39, Page ID # 477-478; Declaration of Jeff King ("King Decl."), RE # 43-2, Page ID # 777; Declaration of Mike Greason, ("Greason Decl."), RE # 43-3, Page ID # 779; Declaration of Kristin Seifert Watson, ("Watson Decl."), RE # 43-4, Page ID # 781, 783-784).

**B.**  **Liggons' 2018 and 2019 wage increases were delayed, and the Union grieved to ensure they were properly calculated.**

In addition to his attendance issues, Liggons also raised issues with his scheduled wage increases because he did not receive them on his anniversary dates in 2018 and 2019. The Union filed grievances on Liggons' behalf regarding his scheduled wage increases for both years. (Liggons Depo. I, RE # 39, Page ID # 477-478). GM ultimately denied both grievances on or about March 29, 2019, asserting that Liggons' wage increases were properly credited, and the Union accepted the response. (*Id.*).

Liggons' wage increases were calculated in accordance with the International Union, UAW and GM's Memorandum of Understanding Re: Calculation of Wage Progression (the "MOU") that was signed on March 4, 2016, and provides language interpretation for wage progression for in-progression employees such as Liggons. (Liggons Depo. I, RE # 39, Page ID # 418). In relevant part, the MOU provides that in-progression employees will move up the wage progression scale based on their weeks worked. (*Id.*). The MOU further states that "any time worked in a week" will constitute a "week worked." (*Id.*).

Due to Liggons' leaves of absence and other attendance issues, there were numerous weeks throughout his tenure with GM during which he did not perform any work. (Liggons Depo. II, RE # 40, Page ID # 665-669). Therefore, those

weeks did not count as "weeks worked" for the purpose of calculating his wage progression. Liggons eventually received the wage increases at issue once he had worked a sufficient number of weeks to reach the next level of progression. (Liggons Depo. II, RE # 40, Page ID # 568).

The Union investigated Liggons' grievances and obtained information from GM to verify that GM correctly applied the MOU to Liggons. (King Decl., RE # 43-2, Page ID # 776; Liggons Depo. II, RE # 40, Page ID # 665-669). Once satisfied that Liggons' wage increases had been correctly calculated, the Union did not continue to pursue the grievances because they would have lacked merit. (King Decl., RE # 43-2, Page ID # 776).

**C.**     **Liggons filed several charges against the Parties hereto.**

Liggons filed several charges with the Ohio Civil Rights Commission ("OCRC") against GM and the Union concerning the disciplinary actions he received in connection with his attendance and his wage increases. On October 5, 2017, Liggons filed OCRC charges against the Union and GM about the disciplinary action he received for his August 16, 2017, unexcused absence. (Liggons Depo. I, RE # 39, Page ID # 369; Liggons Depo II., RE # 40, Page ID # 585-586, 670). On April 30, 2018, Liggons filed another OCRC charge against GM only about the Shop Rule 9 discipline he received for his tardiness on January 12, 2018. (Liggons Depo. I, RE # 39, Page ID # 372). On August 22, 2018,

Liggons filed another OCRC charge against the Union that he later withdrew.[3] (Liggons Depo. II, RE # 40, Page ID # 673-678).

Liggons filed two OCRC charges, one against GM and one against the Union, on March 14, 2019, that were later amended on May 29, 2019. (Complaint, Exs. A, C, RE # 1-1, 1-3, Page ID # 15, 17; Liggons Depo. II, RE # 40, Page ID # 630). Only the facts contained in Liggons' May 29, 2019, OCRC Charges are part of this proceeding because they are the only Charges from which he filed his Complaint. (Complaint, Exs. A-D, RE # 1-1, 1-2, 1-3, 1-4, Page ID # 15-18; Liggons Depo. II, RE # 40, Page ID # 630). With regard to the Union, Liggons alleged that it discriminated against him on the basis of his race and disability and retaliated against him in its handling of the disciplinary actions he received for his fourth and fifth Doc. 8 violations on April 10, 2019, and his 2018 and 2019 wage increases. (Liggons Depo. II, RE # 40, Page ID # 630).[4]

---

[3] Liggons testified he could not remember the subject matter of this particular OCRC charge. (Liggons Depo. II, RE # 40, Page ID # 586-587).

[4] Liggons filed several OCRC charges after he filed the Complaint with the District Court on June 2, 2020. None of the allegations contained in those charges are relevant to this case because Liggons never amended his Complaint to incorporate them. Liggons' contention that he did not know he was able to amend his Complaint does not save him from its deficiencies at this late date. (September 27, 2023, Opinion and Order, RE # 62, Page ID # 1446); *see also Williams v. Zumbiel Box and Packaging Co.*, Case No. 04-cv-675, 2005 WL 8161971, at *1 (S.D. Ohio Feb. 3, 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)) ("[T]hose who proceed without counsel must still comply with the procedural rules that

## IV.    SUMMARY OF THE ARGUMENT

In his Complaint, Liggons alleged that the Union discriminated against him on the basis of his race and disability by failing "to represent [him] in grievances over . . . disciplinary and wage issues that clearly breached the labor contractual provisions." (Complaint, RE # 1, Page ID # 7, 9, 11). Liggons further alleged that the Union retaliated against him because of his previous charges of discrimination by ignoring his "ongoing requests and failing to process" his grievances. (Complaint, RE # 1, Page ID # 12).

This Court should affirm the District Court's awards of partial judgment on the pleadings and summary judgment to UAW Local 14. The District Court correctly determined that Liggons' race and disability discrimination claims against the Defendants-Appellees were in substance hybrid breach of contract/breach of duty of fair representation claims under Section 301 of the LMRA, and as such, they were barred by the applicable six-month statute of limitations for such claims. (March 31, 2021, Opinion and Order, RE # 16, Page ID # 112-115; July 27, 2021, Opinion and Order, RE # 24, Page ID # 155-156). The Court further properly granted summary judgment to UAW Local 14 because Liggons failed to establish the third and fourth elements of his prima facie claim of

---

govern civil cases."). Additionally, Liggons was represented by counsel in this matter until August 25, 2021. (Order, RE # 27, Page ID # 161-162).

Title VII retaliation by the Union. The District Court properly disposed of all of Liggons' claims against UAW Local 14.

The District Court properly analyzed the substance of Liggons' discrimination claims against the Defendants-Appellees and determined that they set forth a hybrid breach of contract/breach of the duty of fair representation claim under Section 301 of the LMRA. The District Court correctly determined that Liggons' discrimination claims could not be resolved without interpreting the terms of the CBA and that Liggons' race and disability discrimination claims against UAW Local 14 further hinged on "the union's collectively-bargained duty to represent him fairly." (March 31, 2021, Opinion and Order, RE # 16, Page ID # 112-115; July 27, 2021, Opinion and Order, RE # 24, Page ID # 156). For those reasons, the District Court properly determined that Liggons' race and disability discrimination claims were in substance hybrid Section 301 LMRA claims, which are subject to a six-month statute of limitations. (*Id.*). Liggons made no allegations concerning conduct of the Union that occurred within six (6) months of the filing of the Complaint. Accordingly, the District Court correctly dismissed Liggons' race and disability discrimination claims as untimely Section 301 claims.

The District Court also properly granted the Union summary judgment with regard to the remaining claim, as Liggons cannot establish the third and fourth elements of his prima facie case of retaliation against it as a matter of law. The

District Court properly found that Liggons could not establish that the Union took any materially adverse action against him or that a causal connection existed between his protected activity of filing OCRC charges and the alleged materially adverse actions of the Union. (September 27, 2023, Opinion and Order, RE # 62, Page ID # 1454-1456).

Even if the District Court improperly concluded that Liggons cannot establish a prima facie case of retaliation, which it did not, summary judgment is still appropriate on this Record. Liggons cannot establish that the Union's legitimate non-discriminatory reasons for its actions of declining to file or advance non-meritorious grievances were pretext for retaliation as a matter of law.

The District Court properly decided both the partial judgment on the pleadings and summary judgment awards in favor of the Union. This Court should affirm the judgments in favor of UAW Local 14.

## V.    ARGUMENT

### A.    <u>Standard of Review</u>.

This Court analyzes the District Court's decisions granting UAW Local 14's Motion for Partial Judgment on the Pleadings and Motion for Summary Judgment under the de novo standard of review. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 628 (6th Cir. 2002) (citing *Daddy's Junky Music*

*Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 279-80 (6th Cir. 1997)).

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standards applicable to motions to dismiss made pursuant to Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). "The moving party must show there is no material issue of fact [to be resolved] and the movant is entitled to judgment as a matter of law." (July 27, 2021, Opinion and Order, RE # 24, Page ID # 155) (citing *Paskavan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991)); *Tucker*, 539 F.3d at 549 (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

Fed. R. Civ. P. 56(a) provides, in part, that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, "[t]he court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor." *Day v. Norwood City Sch. Dist.*, No. 1:12-cv-273, 2013 WL 5656198, at *2 (S.D. Ohio Oct. 16, 2013) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). But the moving party need not disprove the opposing

party's case. *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

In response, "[t]he nonmoving party must then present 'significant probative evidence' to 'do more than show that there is some metaphysical doubt as to the material facts' to defeat the motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quoting *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). The non-moving party cannot rely on conclusory assertions and speculative allegations. *U.S. S.E.C. v. Maxwell*, 341 F.Supp.2d 941, 949 (S.D. Ohio 2004) (quoting *SEC v. Blackwell*, 291 F.Supp.2d 673, 689 (S.D. Ohio 2003)). Thus, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (citations omitted).

In reviewing the District Court's decisions, this Court may also consider grounds not specifically addressed by the District Court. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (citing *J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55, 59 (1940)) ("A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court."); *Abercrombie*, 280 F.3d at 629 ("Because this court's de novo review involves only application of legal propositions to the undisputed facts in the

record, we may affirm on any grounds supported by the record even if different from the reasons of the district court."); *Olympic Fastening Sys., Inc. v. Textron Inc.*, 504 F.2d 609, 617 (6th Cir. 1974) ("In *Jaffke v. Dunham*, 352 U.S. 280, 77 S. Ct. 307, 1 L.Ed.2d 314 (1957), the Supreme Court held that a successful party in the district court may sustain its judgment on any ground that finds support in the record.").

Here, the District Court correctly granted the Union's Motion for Partial Judgment on the Pleadings and Motion for Summary Judgment. There are no material issues of fact to be resolved and UAW Local 14 is entitled to judgment as a matter of law on all of Liggons' claims against it. Further, with regard to Liggons' retaliation claim, summary judgment is appropriate even if this Court finds Liggons could establish a prima facie case because he cannot establish the Union's legitimate non-discriminatory motives were pretext for retaliation as a matter of law. Accordingly, this Court should affirm the District Court's awards in favor of UAW Local 14.

> **B.**   **The First Issue:** ***Whether the District Court properly dismissed Liggons' race and disability discrimination claims against the Union as untimely duty of fair representation claims under Section 301 of the LMRA.***

The District Court properly determined that Liggons' race and disability discrimination claims against UAW Local 14 were in substance Section 301 duty

of fair representation claims. As such, the District Court correctly applied the applicable six-month statute of limitations in its analysis of the viability of Liggons' claims against the Union. Because none of Liggons' allegations involved conduct by the Union occurring in the six (6) months preceding the filing of his Complaint, the District Court appropriately dismissed Liggons' race and disability discrimination claims as untimely Section 301 claims.

### 1.    The District Court correctly construed Liggons' discrimination claims as Section 301 claims.

In his Complaint, Liggons alleged that the Union discriminated against him on the basis of his race and disability status by failing "to represent [him] in grievances over . . . disciplinary and wage issues that clearly breached the labor contractual provisions." (Complaint, RE # 1, Page ID # 7, 9, 11). Thus, by Liggons' own words, his race and disability discrimination claims against the Union "are rooted in the union's collectively-bargained duty to represent him fairly."[5] (July 27, 2021, Opinion and Order, RE # 24, Page ID # 156). Liggons' discrimination claims, as pleaded, cannot be resolved without interpreting the CBA

---

[5] Liggons concedes that his race and disability discrimination claims against the Defendants-Appellees are Section 301 hybrid breach of contract/breach of duty of fair representation claims in his Brief to this Court. (Appellant Brief, DKT # 16, Page 8-9) ("Plaintiff asserts that not only is this a hybrid § 301 / fair representation claim filed timely . . . . Employees may also have their claim heard in federal court under § 301 if the grievance procedure was a 'sham, substantially inadequate or substantially unavailable.'")

to determine whether a breach occurred. As a result, any claims against the Union arising therefrom were actually breach of duty of fair representation claims under Section 301 of the LMRA.

As the District Court noted, Section 301 has a broad preemptive effect on state law causes of action because "'federal law envisions a national labor policy that would be disturbed by conflicting state interpretations of the same CBA.' *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957))." (March 31, 2021, Opinion and Order, RE # 16, Page ID # 112). Under the preemption analysis, "state law claims are preempted when they are 'inextricably intertwined with consideration of the terms of the labor contract' . . . and when application of a state law to a dispute 'requires the interpretation of a collective-bargaining agreement.'" (March 31, 2021, Opinion and Order, RE # 16, Page ID # 112) (quoting *Jones*, 939 F.2d at 382) (additional citations omitted).

While the preemption analysis does not apply in this case because Title VII, 42 U.S.C. § 1981, and the ADA are federal laws rather than state laws, the guiding principles of maintaining a national labor policy and adjudicating hybrid breach of contract/breach of duty of fair representation claims uniformly under Section 301 do apply. This is because, as the District Court determined, what Liggons pleaded as discrimination claims were in substance hybrid breach of contract/breach of

17

duty of fair representation claims under Section 301, and, therefore, the claims should be adjudicated as such.

The District Court correctly determined that Liggons' discrimination claims against the Defendants-Appellees actually stated hybrid breach of contract/breach of duty of fair representation claims under Section 301. In doing so, the District Court properly distinguished this case from this Court's decision in *Watts v. United Parcel Serv., Inc.*, 701 F.3d 188 (6th Cir. 2012). The District Court recognized that this Court in *Watts* noted that "[a] plaintiff may assert 'a separate, statutorily created federal cause of action independent from a CBA-based contract claim under the LMRA." (March 31, 2021, Opinion and Order, RE # 16, Page ID # 113) (quoting *Watts*, 701 F.3d at 192). But, as the District Court properly determined, Liggons did not assert a separate, statutorily created federal cause of action independent from a CBA-based contract claim in his discrimination claims in this matter.

This is not a situation like *Watts* where the plaintiff asserted a claim originating under rights separate from those contained in the contract and where any tie to the CBA could only be inserted by the defendants as a defense to the claim. Instead, the District Court properly determined that Liggons' discrimination claims are Section 301 claims as written by Liggons, because the rights involved could plausibly derive from no other source than the CBA. (March 31, 2021,

Opinion and Order, RE # 16, Page ID # 113) (citing *Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673, 679 (6th Cir. 2001)) (applying the LMRA's statute of limitations to the plaintiff's "purported FLSA" claim because analysis of the claim required an interpretation of the underlying CBA).

Section 301 prohibits a union from acting arbitrarily, discriminatorily, or in bad faith in carrying out its duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). As this Court has found, "[u]nfair representation, then, is unfair representation whether by reason of sex discrimination, handicap discrimination, or a willful breach of responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees." *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir. 1988). There is nothing about Liggons' discrimination claims to warrant distinguishing them from Section 301 claims, and the District Court properly construed them as claims arising under Section 301.

As this Court noted in *Watts*, "'substantive principles of federal labor law must be paramount' when enforcing CBAs. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)." 701 F.3d at 191. It is under Section 301 of the LMRA that the substantive principles of federal labor law have been developed, and, therefore, Liggon's claims seeking to enforce the CBA should be adjudicated pursuant to that law.

19

**2.    The Court properly concluded that Liggons' discrimination claims, construed as Section 301 claims, were time-barred by the applicable statute of limitations.**

Section 301 claims are subject to a six-month statute of limitations. *DelCostello v. International Broth. of Teamster*s, 462 U.S. 151, 169-172 (1983). None of Liggons' allegations speak to conduct of the Union that occurred in the six (6) months preceding the filing of his Complaint. In spite of that fact, Liggons raises for the first time on appeal the "Continuous Violation Doctrine" in support of his position that his Section 301 claims were timely and therefore improperly dismissed. (Appellant Brief, DKT # 16, Page 8-9). This Court should disregard this argument as forfeited. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *see also Cone v. Tessler*, 800 Fed.Appx. 405, 409-10 (6th Cir. 2020) (holding that raising continuing violation doctrine for the first time on appeal did not warrant deviating from this Court's general rule that new arguments raised on appeal are not to be considered). However, even if this Court considers Liggons' new continuing violation argument, Liggons is mistaken in his assertion that it would apply herein.

The continuing violation doctrine provides that when 'there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period.' *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 829 (6th Cir. 2000)."

*Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 Fed.Appx. 352, 356 (6th Cir.

2001).

> Although some courts refuse to apply a continuing violation theory to
> a hybrid Section 301 action, this Circuit has recognized two scenarios
> under which such a theory may arise—one which this Circuit will
> recognize, and the other which it will not. Under the first scenario,
> occurrences within the six-month limitations period *in and of*
> *themselves* constitute unfair labor practices. Evidentiary use,
> therefore, of anterior events is proper in the context of a continuing
> violation claim because "earlier events may shed light on the true
> character of matters occurring within the limitations
> period." *Noble v. Chrysler Motors Corp.,* 32 F.3d 997, 1001 (6th Cir.
> 1994). Under the second theory, an act occurring within the six-month
> limitations period can be labeled an unfair labor practice *only* by
> reliance on earlier unfair labor practices. The previous unfair labor
> practices are not merely evidence, therefore, but "serve to cloak with
> illegality that which was otherwise lawful." *Id.* (citing *Metz v. Tootsie*
> *Roll Indus., Inc.,* 715 F.2d 299, 305 (7th Cir.1983)). In such a case,
> there is no continuing violation if the earlier event the complaint is
> based upon is itself time-barred. Such reliance, in effect, would result
> in reviving a legally defunct unfair labor practice. *Id.*

*Dudich v. United Auto Workers Local Union No. 1250*, 454 F.Supp.2d 668, 678

(N.D. Ohio 2006) (emphasis in original). Neither of these above-described

scenarios exist here, and no theory of a continuing violation could apply to bring

Liggons' claims within the six-month limitations period.

   None of the discriminatory acts Liggons alleged occurred within the six (6)

months preceding the filing of his Complaint. Encompassed in the OCRC Charge

from which Liggons' Complaint derived and thus included in this matter are only

the Union's actions with regard to his April 2019, Doc. 8 disciplinary actions and

his two (2) wage increases. (Complaint, Ex. C, RE # 1-3, Page ID # 17; Liggons Depo. II, RE # 40, Page ID # 630). Liggons knew that the Union would not file a grievance protesting the two (2) attendance disciplinary actions at the time they were issued. (*Id.*). The last action the Union took with regard to the two (2) wage increase grievances was March 29, 2019, more than one (1) year prior to the filing of the Complaint in this matter.[6] (Liggons Depo. II, RE # 40, Page ID # 654-655). Accordingly, there is no means by which the continuing violation doctrine could serve to extend the applicable six-month statute of limitations in this matter.

Liggons cannot prove any set of facts that would support his race and disability discrimination claims against UAW Local 14 as they are, in substance, time-barred Section 301 claims under the LMRA. Therefore, the District Court correctly granted UAW Local 14's Motion for Partial Judgment on the Pleadings, and this Court should affirm the District Court's holding.

C.  **The Second Issue:** ***Whether summary judgment was appropriate on this Record because Liggons cannot establish a prima facie case of retaliation under the McDonnell Douglas burden-shifting framework.***

The District Court properly determined that Liggons cannot establish a prima facie case of Title VII retaliation against UAW Local 14 because he did not

---

[6] Liggons had knowledge that UAW Local 14 accepted GM's denial of the two pay raise grievances by on or about April 25, 2019, at the latest, because he was provided a copy of the Union's response to his OCRC Charge. (Liggons Depo. II, RE # 40, Page ID # 569-571, 654-655).

raise a genuine dispute of material fact as to whether the Union took any materially adverse action against him or whether a causal connection existed between his protected activity and the alleged materially adverse action. Because Liggons cannot establish a prima facie case of retaliation as a matter of law, the District Court properly awarded UAW Local 14 summary judgment on that claim. This Court should affirm the award.

As the District Court noted, to establish a prima facie case of retaliation, Liggons must establish the following elements:

> '(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'

(September 27, 2023, Opinion and Order, RE # 62, Page ID # 1451-1452) (quoting *Laster v. City of Kalamazoo*, 764 F.3d 714, 730 (6th Cir. 2014)) (further citations omitted). The Union assumed the existence of the first two elements for the purposes of this litigation. The District Court properly concluded that Liggons cannot establish the third and fourth elements as a matter of law, and this Court should affirm.

### 1. The District Court properly determined that the Union took no materially adverse action against Liggons.

As the District Court explained, "a materially adverse action . . . is an action which 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (September 27, 2023, Opinion and Order, RE # 62, Page ID # 1454) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The materially adverse actions Liggons identified—Doc. 8 discipline and the withholding of wage increases—were taken by GM, not the Union. (September 27, 2023, Opinion and Order, RE # 62, Page ID # 1455). Therefore, the District Court correctly found that **the Union** did not take any materially adverse actions against Liggons. (*Id.*).

Liggons asserts that the Union did nothing to address his concerns and that, in and of itself, constitutes a "materially adverse action." (Appellant Brief, DKT # 16, Page 5-6). While it is clear that Liggons is unsatisfied with the representation he received from the Union, the undisputed material facts in the Record demonstrate that the Union did assist Liggons to attempt to obtain redress for what he perceived to be violations of the CBA where appropriate.

"The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good

24

faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). Liggons' arguments in this matter are grounded in his own interpretation of the various relevant contractual provisions. Liggons' personal interpretations cannot create a genuine dispute of material fact. *See Smith v. Highland Park Federation of Teachers*, 833 F.2d 1013 (Table), 1987 WL 38242 at *3 (6th Cir.  Nov. 9, 1987) (citing *Vaca*, 386 U.S. at 194) ("At most, plaintiff has demonstrated that a difference of opinion existed between himself and the union, which is insufficient to create an issue of fact as to the union's duty of fair representation."). Liggons cannot establish, as a matter of law, that the Union's actions in not pursuing non-meritorious grievances could have possibly dissuaded a reasonable worker from making or supporting a charge of discrimination. The District Court properly decided this issue.

As noted *supra*, Doc. 8 specifically "strictly" limits grievances that can be filed for members in relation to discipline they receive under the policy "to claims that the procedure was improperly administered." (Liggons Depo. I, RE # 39, Page ID # 420). The timeline of Liggons' various absences covered by Doc. 8 reveals that he was properly disciplined because his various leaves of absence extended the amount of time the previous absence remained on his record. GM properly administered the Doc. 8 disciplinary procedure with the two (2) disciplinary actions it issued on April 10, 2019. (Greason Decl., RE # 43-3, Page ID # 779).

Therefore, the Union could not grieve Liggons' attendance violations and not doing so was not a materially adverse action.

As for Liggons' concerns about his wage increases in 2018 and 2019, the Union did file grievances on his behalf. (Liggons Depo. I, RE # 39, Page ID # 477-478). GM denied both grievances, claiming that Liggons' wage increases were properly credited in accordance with the MOU. (*Id.*). The Union investigated the matter and obtained information from GM to confirm that it correctly applied the terms of the MOU to Liggons. (King Decl., RE # 43-2, Page ID # 776; Liggons Depo. II, RE # 40, Page ID # 665-669). Liggons' leaves of absence and other attendance issues resulted in numerous weeks during which he did not perform any work, thereby delaying his receipt of the scheduled wage increases for both 2018 and 2019. (Liggons Depo. II, RE # 40, Page ID # 665-669). And ultimately, Liggons did receive his wage increases in 2018 and 2019 once he had worked the requisite number of weeks. (Liggons Depo. II, RE # 40, Page ID # 568).

It is well established that a union does not have to pursue every avenue requested by a member. *See, e.g.*, *Ely v. Newell-Rubbermaid, Inc.*, 50 Fed.Appx. 681, 689 (6th Cir. 2002) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994)) ("'[a] union does not…have to exhaust every possible remedy requested by a member facing disciplinary action.'"). Nor is the Union required to file or continue to pursue non-meritorious grievances. *See Vaca v.*

26

*Sipes*, 386 U.S. 171, 191 (1967); *Dragomier v. Local 1112 UAW*, 620 Fed.Appx.

517, 521-22 (6th Cir. 2015); *Kelsey v. FormTech Indus.*, 305 Fed.Appx. 266, 269

(6th Cir. 2008). Thus, the Union did not take any adverse action against Liggons

when it refused to file or further advance grievances that it considered non-

meritorious.

And even if this Court determined that the Union took adverse actions

against him, Liggons does not identify how those actions constitute "materially

adverse actions." As the District Court noted, Liggons "fails to show how that

conduct 'might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" (September 27, 2023, Opinion and Order, RE # 62,

Page ID # 1455) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68 (2006)). The undisputed material facts therefore support summary judgment in

favor of the Union as Liggons cannot establish the third element of his prima facie

case of retaliation as a matter of law.

> **2.    The District Court correctly determined that there was no
> causal connection between Liggons' protected activity and
> any materially adverse action.**

The District Court also correctly determined that Liggons could not establish

a causal connection between his protected activity and the conduct he alleged

constituted materially adverse action as a matter of law. As the District Court

noted, Liggons' belief that the Union's actions were retaliatory for protected

activity "is unsupported by **any** evidence in the record." (September 27, 2023, Opinion and Order, RE # 62, Page ID # 1456) (emphasis added).

Liggons' own testimony in this matter establishes that he believes he fell on the "bad side" of the Union and felt that he would never be treated fairly after an interaction he had with UAW Local 14 District Committeeperson Robin Marr in 2016. (Liggons Depo. II, RE # 40, Page ID # 516-518). Liggons did not raise concerns regarding his membership in any protected class during this 2016 conversation. (*Id.*). And Liggons did not file his first charges with the OCRC until 2017. (Liggons Depo. II, RE # 40, Page ID # 670). The causal connection aspect of Liggons' retaliation claim depends on his protected activity of filing OCRC charges. (Complaint, RE # 1, Page ID # 12-13).

Liggons has presented no evidence that could create a genuine dispute of material fact upon which a reasonable jury could find that a causal connection exists between his protected activity of filing OCRC charges and the actions he perceived to be materially adverse. Liggons cannot establish the fourth element of his prima facie case of retaliation against the Union as a matter of law. Therefore, this Court should uphold the District Court's award of Summary Judgment to the Union.

D.   **The Third Issue:** *Whether summary judgment was also appropriate on this Record because Liggons cannot establish that the Union's legitimate non-discriminatory reasons were pretext for retaliation.*

Even if this Court finds that the District Court erred in deciding that Liggons failed to establish a prima facie case of retaliation, summary judgment is still appropriate on this Record because Liggons cannot establish that the Union's legitimate non-discriminatory reasons for its conduct were pretext for retaliation. "After proving the existence of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). If the defendant satisfies this burden, "the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination." *Id.*

As this Court has explained:

> [A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the [defendant's] actions, or (3) that they were insufficient to motivate the [defendant's] actions. To carry [his] burden in opposing summary judgment, [plaintiff] must produce sufficient evidence from which a jury could reasonably reject [defendant's] explanation of why it [acted as it did].

*Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (internal citations omitted). Liggons has offered no evidence to support any of these theories of pretext.

First, Liggons cannot show that the Union's actions had no basis in fact. Liggons does not dispute the facts underlying the Union's analysis regarding his Doc. 8 disciplinary actions or the receipt of his wage increases, i.e., that he had various attendance issues that affected both his Doc. 8 disciplinary track and scheduled wage increases. Instead, Liggons simply interprets the relevant contractual language differently or asserts that it does not apply to him. (*See, e.g.*, Liggons Depo. I, RE # 39, Page ID # 291-292; Liggons Depo. II, RE # 40, Page ID # 549, 581). Such differences of interpretation cannot create a factual issue. *Smith*, 1987 WL 38242 at *3. Thus, Liggons cannot demonstrate that the Union's actions were not based in fact as a matter of law.

Second, Liggons cannot establish that the Union was not motivated by its proffered reasons for taking the actions it did. As noted *supra*, Liggons can only demonstrate that he disagreed with the Union's interpretation of the relevant contractual language, not that the Union was not motivated by its understanding thereof. And with regard to his fourth and fifth Doc. 8 disciplinary actions, the Record shows that the Union never grieved any disciplinary action that Liggons received under Doc. 8, some of which pre-dated any of his OCRC charges. (Liggons Depo. II, RE # 40, Page ID # 498-500; Watson Decl., RE # 43-4, Page ID # 783). That fact alone demonstrates that the Union's motivations were true, as it

handled Liggons' Doc. 8 disciplinary actions consistently before and after he engaged in protected activity.

Moreover, Liggons himself testified that the Union treated him poorly following a 2016 interaction with District Committeeperson Marr. It follows then that, per Liggons' own theory, the Union was motivated to act as it did on the basis of that interaction, not his protected activity, which does not establish pretext for a Title VII retaliation claim.

Finally, Liggons cannot, as a matter of law, show that the Union's proffered reasons were not sufficient to support its conduct. As the exclusive bargaining representative of employees at the Plant, the Union has an interest in pursuing grievances that are meritorious so as to reinforce the grievance procedure and its position as statutory agent for the employees as legitimate. *See Vaca*, 386 U.S. at 191-92. Here, the Union investigated Liggons' various complaints, grieved them when warranted, and accepted grievance responses when appropriate. For these reasons, Liggons cannot establish that the Union's actions were pretextual or that it was not motivated by its proffered legitimate non-discriminatory reasons. Liggons cannot produce sufficient evidence from which a jury could reasonably reject the Union's explanation for its conduct as a matter of law. This additional reason supports the District Court's decision to award summary judgment to UAW Local 14.

# VI.   CONCLUSION

The District Court correctly determined that Liggons' race and disability discrimination claims against the Union were Section 301 breach of duty of fair representation claims under the LMRA and were therefore governed by a six-month statute of limitations. The undisputed material facts establish that none of Liggons' allegations occurred within the six (6) months preceding the filing of his Complaint and that they are therefore time-barred.

The District Court also properly determined that summary judgment was appropriate because Liggons could not establish a prima facie case of retaliation under Title VII. Liggons failed to provide evidence that the Union took any materially adverse action against him. Moreover, Liggons did not produce any evidence that could establish a causal connection between his protected activity and the alleged materially adverse actions.

Even if this Court determines that Liggons could establish a prima facie case, summary judgment is still warranted on this Record because Liggons cannot establish that the Union's legitimate non-discriminatory reasons for its actions were pretext for retaliation.

For these reasons and all of the reasons set forth herein, Defendant-Appellee UAW Local 14 respectfully requests that this Court dismiss Liggons' appeal,

affirm the awards of partial judgment on the pleadings and summary judgment in favor of UAW Local 14, and grant any and all further relief that is warranted.

Respectfully submitted,

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)
Lane C. Hagar (0101110)
Cloppert, Latanick, Sauter & Washburn
225 E. Broad Street
Columbus, Ohio 43215
Telephone:  (614) 461-4455
Facsimile:   (614) 621-6293
Email:        kwatson@cloppertlaw.com
                  lhagar@cloppertlaw.com

Attorneys for Defendant-Appellee
UAW Local 14

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing Brief complies with the type volume limitation of Fed. R. App. P. 32(a)(6) and Fed. R. App. P. 32(a)(7)(B) as it was prepared in using Times New Roman, 14 pt. Font, and contains **7,901** words.

<u>/s/ Kristin Seifert Watson</u>
Kristin Seifert Watson (0078032)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing though the Court's system. Additionally, a copy of the foregoing was served by regular U.S. mail, postage pre-paid on February 15, 2024, upon the following:

Shawn Liggons
7843 Rea Road, Apt. 177
Indianapolis, IN 46227

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)

**DESIGNATION OF**
**RELEVANT DISTRICT COURT DOCUMENTS**

|  | **Record Entry #** | **Page ID #** |
|---|---|---|
| Complaint | 1 | 1-14 |
| Complaint, Ex. A | 1-1 | 15 |
| Complaint, Ex. B | 1-2 | 16 |
| Complaint, Ex. C | 1-3 | 17 |
| Complaint, Ex. D | 1-4 | 18 |
| GM Motion to Dismiss | 12 | 44-55 |
| March 31, 2021, Opinion and Order | 16 | 109-115 |
| Union Motion for Partial Judgment on Pleadings | 19 | 131-134 |
| July 27, 2021, Opinion and Order | 24 | 153-156 |
| August 25, 2021, Order | 27 | 161-162 |
| Liggons Depo. I (and Exs. A-DD) | 39 | 185-479 |
| Liggons Depo. II (and Exs. EE, U-1-U-28) | 40 | 480-696 |
| GM Motion for Summary Judgment | 42 | 709-734 |
| Union Motion for Summary Judgment | 43 | 745-746 |
| Union Memo. in Support of MSJ | 43-1 | 747-774 |
| Declaration of Jeffrey King | 43-2 | 775-777 |
| Declaration of Michael Greason | 43-3 | 778-780 |

| | | |
|---|---|---|
| Declaration of Kristin Seifert Watson | 43-4 | 781-784 |
| September 27, 2023, Opinion and Order | 62 | 1445-1457 |
| Notice of Appeal | 65 | 1470 |